UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| **AMANDA CHRISTIAN,** | |
| Plaintiff, | |
| v. | Case No. 5:24-cv-899-HDM |
| **SANOH AMERICA, INC.,** | |
| Defendant. | |

## MEMORANDUM OPINION

Amanda Christian sues Sanoh America, claiming that Sanoh interfered with her rights under the Family and Medical Leave Act, 29 U.S.C. § 2601, *et seq.*, when it denied her requests for leave to treat her neck condition. (Doc. 1 at 5–7). Christian further claims that Sanoh terminated her in retaliation for her attempted use of that leave. *Id.* at 7–9. Sanoh now moves for summary judgment on both claims. (Doc. 42).

First, Sanoh argues that it is entitled to summary judgment on Christian's interference claim because she failed to correctly certify her leave—despite multiple chances to cure. (Doc. 43 at 22–26). Second, Sanoh argues that Christian fails on her retaliation claim because she never engaged in protected conduct and, therefore, her termination cannot be causally related to her exercise of rights conferred by the Family Medical Leave Act (hereinafter, the "Act"). *Id.* at 26–29. Conversely,

Christian argues that Sanoh did not give her adequate time to cure her certification under the Act and that her termination after her request for leave establishes a clear causal relationship. (Doc. 48 at 18–23). For the reasons stated below, the court agrees with Sanoh and **GRANTS** its motion for summary judgment.

## BACKGROUND

Defendant Sanoh America, Inc., an Ohio corporation, operates automobile manufacturing plants in northern Alabama. (Doc. 1, ¶ 4). Plaintiff Amanda Christian started working for Sanoh in 2022 as a production worker. *Id.* at ¶ 6. Her job required her to occasionally lift boxes that weighed approximately twenty pounds. (Doc. 34 at 44). Additionally, Sanoh relies on an attendance policy under which employees accumulate "points" for unexcused absences, with six points resulting in termination. (Doc. 38 at 18). Sanoh would send an employee a warning if they accumulated four points and a final warning if they accumulated five points. *Id.*

While Christian worked at Sanoh, she suffered from nerve pain in her neck, back, and arm that would give her severe headaches and cause her arm to go numb. (Doc. 34 at 56–59). She sought treatment from Dr. Siniard, a chiropractor. *Id.* at 56. Dr. Siniard started treating Christian and he recommended that she should lay on a firm pillow when her symptoms worsened. *Id.* at 63.

On March 6, 2024, Sanoh gave Christian her first warning when she accumulated four attendance points. (Doc. 34-12). Two days later, Christian requested leave under the Act and Sanoh asked Christian to certify that leave with her medical provider by March 25th. (Doc. 34-13). Dr. Siniard's office returned a certification form on March 21st, (doc. 34-14), but Sanoh concluded that the form was insufficient because (1) it failed to indicate whether the condition necessitated absences from work, (2) it provided vague treatment instructions in which Christian would need treatment "at her own discretion," and (3) it failed to provide sufficient detail on Christian's restriction from heavy lifting. (Doc. 34-14).

Christian discussed the insufficiencies in the certification form with Sanoh's human resources department and Sanoh gave Christian seven days to cure the certification. *Id.*; (Doc. 34 at 133). Five days later, on March 26th, Sanoh received another certification form, (doc. 34-15), but, again, it contained insufficient information regarding Christian's "treatment at her own discretion" and the deadline for the restriction on heavy lifting. (Doc. 34-16). Sanoh denied the certification and gave Christian a further seven days to cure the insufficient paperwork. *Id.*; (Doc. 34 at 135).

Over the next week and a half, Sanoh received certification paperwork from Dr. Siniard's office on April 5th and April 8th, but both submissions were identical to the former certification paperwork submitted to Sanoh on March 26th—the

3

paperwork Sanoh concluded was insufficient. (Doc. 34 at 138–141). Sanoh concluded this subsequent certification was also insufficient, and it denied Christian's leave on April 9, 2024. (Doc. 34-19). As a result, Christian's absences from work were not excused, she received the additional absence points, and, consistent with its attendance policy, Sanoh terminated her for accumulating six points between March 8th and April 8th of that year. (Doc. 34 at 144–45).

Three months later, Christian sued Sanoh, claiming that it interfered with her leave and terminated her in retaliation for her attempted use of that leave. (Doc. 1). Sanoh now moves for summary judgment on both claims. (Doc. 42).

## LEGAL STANDARD

The Federal Rules of Civil Procedure dictate that summary judgment "is appropriate where the pleadings, affidavits, depositions, admissions, and the like 'show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1050 (11th Cir. 2015) (quoting Fed. R. Civ. P. 56(a)) (alteration in original).

Ordinarily, a party seeking summary judgment "bears the initial responsibility of informing the . . . court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a

4

genuine issue of material fact." *Burger King Corp. v. E-Z Eating, 41 Corp.*, 572 F.3d 1306, 1313 (11th Cir. 2009) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)) (alteration in original). Further, courts must "constru[e] the evidence and all reasonable inferences therefrom in favor of the nonmoving party." *Urquilla-Diaz*, 780 F.3d at 1050 (citing *Battle v. Bd. of Regents*, 468 F.3d 755, 759 (11th Cir. 2006)). Even so, the nonmovant cannot survive summary judgment unless it "offer[s] more than a mere scintilla of evidence for its position; indeed, the nonmoving party must make a showing sufficient to permit the jury to reasonably find on its behalf." *Id.* (citing *Brooks v. Cnty. Comm'n*, 446 F.3d 1160, 1162 (11th Cir. 2006)).

## DISCUSSION

Sanoh moves for summary judgment on both the interference and retaliation claims, and it argues, among other things, that Christian failed to properly certify her request for leave under the Act, which prevented her from being entitled to that leave and currently prevents her from asserting successful interference and retaliation claims. (Doc. 43 at 10–17, 22–26). Christian responds that her failure to certify is evidence of Sanoh's interference and retaliation. (Doc. 48 at 15–23). She further argues that she presents a genuine dispute of material fact showing that Sanoh interfered with her benefits under Act and then terminated her in retaliation for attempting to use those benefits. *Id*.

The court agrees with Sanoh: Christian cannot genuinely dispute that she failed to properly certify her paperwork within the statutory period, which means that she failed to show that she was entitled to leave under the Act. As explained below, this is fatal to both her interference and retaliation claims and Sanoh is entitled to summary judgment.

### A. Christian cannot show that she adequately cured the vague and ambiguous information on her certification within the statutory time period.

Sanoh asserts multiple theories as to why it is entitled to summary judgment on Christian's interference claim, (doc. 43 at 10–26), but the court will only address one: whether Christian sufficiently cured her certification paperwork within the statutory period to qualify for leave. If Sanoh prevails on that argument alone, then Christian's interference claim is untenable and Sanoh is entitled to summary judgment.

Sanoh argues that Christian failed to submit sufficient certification paperwork to entitle her to leave and then failed to cure the deficient certification within the statutory timeframe when given multiple opportunities to do so. *Id.* at 22–26. Conversely, Christian argues that Sanoh did not give her adequate opportunity to cure the defects in her certification paperwork and that Sanoh kept "moving the goalposts" to prevent her from curing the insufficiencies. (Doc. 48 at 18–23).

"An [FMLA] interference claim has two elements: (1) the employee was entitled to a benefit under the FMLA, and (2) her employer denied her that benefit." *White v. Beltram Edge Tool Supply, Inc.*, 789 F.3d 1188, 1191 (11th Cir. 2015) (citing *Krutzig v. Pulte Home Corp.*, 602 F.3d 1231, 1235 (11th Cir. 2010)). If an employee requests leave under the Act, an employer is explicitly authorized to require the employee to certify the need for such leave through their health care provider. 29 U.S.C. § 2613(a); *see also* 29 C.F.R. § 825.305(a).

To be entitled to leave after an employer requests certification, the employee "must provide a complete and sufficient certification to the employer." 29 C.F.R. § 825.305(c). A certification is sufficient if it states, among other things, the appropriate medical facts of the condition, the probable duration of the condition, and a brief statement that the employee is unable to perform the functions of their position. 29 U.S.C. § 2613(b).

Certification "is considered insufficient if the employer receives a complete certification, but the information provided is vague, ambiguous, or non-responsive." 29 C.F.R. § 825.305(c). If the employer concludes the certification is insufficient, it must provide the employee seven days to cure any deficiency. *Id.* And if the employee fails to cure the deficiencies specified by the employer, the employer may deny the request for leave. *Id.*

Here, the undisputed facts show that Christian failed to provide sufficient certification to qualify for leave under 29 U.S.C. § 2613(b), and Sanoh gave her sufficient time to cure her certification—which she failed to do. On March 8, 2024, Sanoh requested certification from Christian's medical practitioner. (Doc. 34-13). When Sanoh received Christian's initial certification forms on March 21st, Sanoh noted multiple deficiencies, including: (1) that it failed to indicate whether the condition necessitated absences from work, (2) that it provided vague treatment instructions in which Christian would need treatment "at her own discretion," and (3) that it failed to provide sufficient detail on Christian's restriction from heavy lifting. (Doc. 34-14).

Sanoh told Christian to cure the deficiencies by March 28th, seven days later. *Id.*; (Doc. 34 at 133). Christian filed her second certification form on March 27th, and it provided more detail on her heavy lifting restrictions. (Doc. 34-16). But it still contained insufficient information regarding specific medical facts of her condition, including her "treatment at her own discretion," and the deadline for the restriction on heavy lifting—all of which are required under 29 U.S.C. § 2613(b). Sanoh gave Christian another seven days and requested that she cure her paperwork by April 3rd. (Doc. 34-16). But over the next week and a half, Sanoh received two more certification submissions that were identical to the previous insufficient certification that Sanoh asked Christian to cure. (Doc. 34. at 138–141).

Christian argued at the summary judgment hearing that the timeline to cure is an issue of fact that prevents Sanoh from being entitled to summary judgment. However, looking at the record, Christian fails to show that a genuine dispute of material fact exists over the timeline: Christian was given ample time to submit her original certification paperwork and, each time that Sanoh requested she cure the deficiencies, she was given seven days to do so. She was given seven days after her first submission on March 21st, (doc. 34-14), and then seven more days after her second submission on March 27th. (Doc. 34-16). Those dates show that Sanoh conformed with the time requirements in 29 C.F.R. § 825.305(c).

Further, Christian argues that Sanoh kept "moving the goalposts" for the information required to cure the paperwork, (doc. 48 at 22), but that is also incorrect. In its original denial, Sanoh asked for more information regarding Christian's restrictions on her work, how long those restrictions would last, and what "treatment at her own discretion" meant. (Doc. 34-14). When Christian submitted the second set of certification paperwork, it only defined what her restrictions were, i.e. that she could not lift more than 20 pounds. (Doc. 34-15). But the paperwork failed to provide more information regarding any more details on her condition, how long the heavy lifting restriction would last, and what "treatment at her own discretion" meant. *See id.* All this despite Christian consulting Sanoh's human resources department to confirm the information that she needed to provide. (Doc. 34 at 132–33). And after

9

three attempts, Sanoh concluded that the certification was insufficient and applied the absence points, which led to Christian's termination under the attendance policy. (Doc. 34-19).

Thus, Sanoh's denial of Christian's leave and certification conformed with the time restrictions in 29 C.F.R. § 825.305(c), and its classification that the certification was insufficient conformed with 29 U.S.C. § 2613(b). Therefore, Christian failed to show that she was entitled to benefits under the Act and summary judgment against her interference claim is granted.[1]

### B. Christian fails to show that Sanoh retaliated against her for her protected conduct or that the protected conduct caused the termination.

Sanoh argues that it is entitled to summary judgment on Christian's retaliation claim for two reasons: (1) she cannot show that she engaged in statutorily protected conduct because she was not entitled to leave under the Act, and (2) she cannot show that her termination was causally related to any protected conduct. (Doc. 43 at 26–29). Further, Sanoh argues that Christian cannot show that its legitimate, non-

---

[1] Even if Christian established a genuine dispute of material fact over the certification timeline, her claim would still fail as Dr. Siniard never concluded that she had a serious condition that entitled her to leave under the Act, and he never certified Christian's paperwork nor authorized his office to certify her paperwork, which is required for an employee to establish that they are entitled to a benefit conferred by the Act. *See Green v. MOBIS Ala., LLC*, 995 F. Supp. 2d 1285, 1310 (M.D. Ala. 2014), *aff'd*, 613 F. App'x 788 (11th Cir. 2015); *see also Novak v. MetroHealth Med. Ctr.*, 503 F.3d 572, 579 (6th Cir. 2007).

Further, the court chooses not to address the other arguments on whether Christian's illness was a serious medical condition under Act as it is not necessary for the disposition of this case.

discriminatory reason for terminating her was pretext for discrimination. *Id*. Christian counters that she was entitled to leave and that she was terminated because she applied for that leave to treat her medical condition. (Doc. 48 at 20–23).

To succeed on a retaliation claim under the Act, a plaintiff must show that they suffered an adverse employment action because they engaged in protected activity. *E.g.*, *Schaaf v. Smithkline Beecham Corp.*, 602 F.3d 1236, 1243 (11th Cir. 2010). If there is no direct evidence of the employer's retaliatory intent, then the court applies the burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973). *Id*. Under *McDonnell Douglas*, Christian must show a prima facie case of retaliation by demonstrating that "(1) she engaged in statutorily protected activity, (2) she suffered an adverse employment decision, and (3) the decision was causally related to the protected activity." *Id*. For the first element, an employee does not engage in protected conduct if they fail to properly certify their request for leave. *See Cash v. Smith*, 231 F.3d 1301, 1307 (11th Cir. 2000).

If Christian establishes a prima facie case of retaliation, then, under *McDonnell Douglas*, the burden shifts to Sanoh to give a legitimate, non-discriminatory reason for the termination. *Schaaf*, 602 F.3d at 1243. If Sanoh does so, the burden then shifts back to Christian to show that the reason was pretext for discrimination and "that the reasons given by the employer were not the real reasons

for the adverse employment decision." *Id.* at 1244. The employee "must meet that reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason." *Chapman v. AI Transp.*, 229 F.3d 1012, 1030 (11th Cir. 2000) (en banc).

Here, Christian fails to show a prima facie case of retaliation because she cannot show that she engaged in statutorily protected conduct, nor can she show that her termination was causally related to that conduct. As mentioned in the section above, Christian never properly certified her request for leave. Thus, she did not participate in protected conduct, and, therefore, she cannot show that there was a causal relationship between her termination and protected conduct. Thus, Christian cannot establish a prima facie case of retaliation.

However, even if Christian could establish a prima facie case of retaliation, Sanoh provided a legitimate, non-discriminatory reason for her termination—Christian accumulated six points for her attendance policy after she failed to cure her deficient certification. Thus, the burden shifts back to Christian to show that the given reason is pretext for retaliation, but she has failed to do so.

Christian argues that Sanoh's "shifting explanation" for the deficiencies in the paperwork was inconsistent and that she diligently tried to cure the paperwork within the stated time frame. (Doc. 48 at 22–23). However, as mentioned above, Sanoh's explanations for why Christian's paperwork was deficient conformed with 29 U.S.C.

§ 2613 and Christian's diligence does not resolve the fact that she failed to cure her paperwork within the required seven days. That failure meant that her absences were unexcused, and she accumulated sufficient absence points under Sanoh's policy to be fired. Thus, Christian fails to rebut Sanoh's reason "head on" or show a genuine dispute of material fact that Sanoh's proffered reason for her termination was pretext for discrimination. Accordingly, Sanoh is entitled to summary judgment on Christian's retaliation claim.

## CONCLUSION

For the reasons stated herein, the court **GRANTS** Defendant Sanoh America Inc.'s motion for summary judgment, (doc. 42), and **DISMISSES** the case. A separate judgment will be issued along with this Memorandum Opinion.

**DONE** and **ORDERED** on December 5, 2025.

**HAROLD D. MOOTY III**
UNITED STATES DISTRICT JUDGE